# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| SHEMILY ORTIZ, § § *Plaintiff*, § § v. § § RELIASTAR LIFE INSURANCE § COMPANY, § § *Defendant*. § | Civil Action No. 4:20-CV-00915 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant ReliaStar Life Insurance Company's Motion for Summary Judgment (Dkt. #31). Having considered the pleadings and the relevant arguments, the Court finds the motion should be **DENIED**.

## BACKGROUND

Plaintiff Shemily Ortiz ("Ortiz") is the beneficiary of a life insurance policy (the "Policy") held by her late husband, William Ortiz ("William"), who worked for the City of Fort Worth prior to his passing. Ortiz commenced this action to recover accidental death and dismemberment ("AD&D") insurance from Defendant ReliaStar Life Insurance Company ("ReliaStar") following her husband's death in April 2018. The City of Fort Worth had obtained a group life insurance policy that included supplemental AD&D insurance, payable if three conditions are met: 1) the insured is covered for AD&D on the date of the accident; 2) the "[l]oss occurs within 180 days of the date of the accident"; and 3) "[t]he cause of the loss is not excluded" (Dkt. #31 at p. 6). An accident is defined as "an unexpected, external, violent and sudden event" (Dkt. #31 at p. 6). Excluded from coverage are "loss[es] directly or indirectly caused by . . . [p]hysical or mental illness" (Dkt. #31 at p. 6).

William passed away on April 13, 2018—twenty days after he and his sons were rear-ended in their vehicle at a red light. The accident resulted in $639.60 of damage to the vehicle. No first responders nor police were called to the scene. Further, at the time, William had asked his teenage sons to keep the news of the accident from their mother, Ortiz, to prevent her from becoming upset. That evening, William acted strangely while at home with his family. The next morning, March 25, 2018, William was taken to the emergency room by ambulance. Ortiz, unaware of the car accident, did not inform the emergency personnel of its occurrence. At some point after the Ortiz family had arrived at the hospital, hospital personnel questioned the family and learned about the car accident from the two sons. Ortiz first became aware of the accident at this time.

At the hospital, a CT scan revealed a subarachnoid hemorrhage ("SAH"), resulting in William's transfer to a different hospital for a greater level of care. There, a neurologist examined William, finding a ruptured aneurysm of an intracranial artery, for which the neurologist ordered an angiogram and embolization procedure that a diagnostic radiologist performed the following day. The radiologist's preoperative and postoperative diagnosis was "ruptured flow related aneurysm related to [arteriovenous malformation ('AVM')]" (Dkt. #31 at p. 8). It is now known that William was born with the defect AVM (Dkt. #31-1 at p. 5). William ultimately died from the SAH.

There is dispute as to how William's AVM affected his death. ReliaStar submits that a "ruptured aneurysm—an abnormal anatomical structured that is unrelated to a traumatic event—caused the SAH from which [William] died" (Dkt. #38 at p. 4). Ortiz argues that "[t]here is no evidence that William died of any illness . . . [and] nowhere or anywhere is [AVM] suggested or proven to be an 'illness'" (Dkt. #31-1 at p. 5). Further, Ortiz contends that "even if an AVM is an

'illness' [i]t has nothing to do with a[n] SAH caused by an auto accident" (Dkt. #31-1 at p. 5). Ortiz' expert, Dr. Meisamy, specifically asserts that "the car accident caused a catecholamine release which increased the pressure on the AVM, causing the aneurysm to rupture, and [led] to the SAH" (Dkt. #38 at p. 6). These arguments present the crux of the dispute in this motion and in the case as a whole.

Following his death, William's auto insurance company "paid policy limits related to the death of William as well as paid injury benefits to William's two sons" (Dkt. #38 at p. 5). After Ortiz submitted a Proof of Death, ReliaStar tendered the $384,000 basic and supplemental life insurance and applicable interest. When Ortiz attempted to collect AD&D insurance, ReliaStar commenced an investigation, collecting William's "Death Certificate, medical records, and additional documents from [Ortiz], including documents regarding the car accident" (Dkt. #31 at p. 11). ReliaStar then informed Ortiz that it was denying her AD&D claim, advising that such benefits are payable only if the insured "dies as the result of a covered loss due to a covered accident" which excludes "loss directly or indirectly caused by physical illness" (Dkt. #31 at p. 11).

Ortiz brought the following claims against ReliaStar after it denied her AD&D claim: (1) breach of contract; (2) violation of Texas Insurance Code §§ 541.060(a)(1), 541.060(a)(2)(A), 541.060(a)(3), 541.060(a)(4), and 541.060(a)(7)); and violation of the Texas Prompt Payment of Claims Act § 542.058. ReliaStar filed the present Motion for Summary Judgment (Dkt. #31) on September 17, 2021. Ortiz filed her response on October 14, 2021 (Dkt. #39).[1] ReliaStar filed its reply on October 13, 2021 (Dkt. #38).

---

[1] Ortiz initially filed her response on October 6, 2021 but refiled with a corrected document on October 14, 2021.

**LEGAL STANDARD**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial."

*Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

ReliaStar seeks summary judgment because it claims Ortiz has not and cannot meet her burden of showing that William's death was an "accident" that is payable under the Policy. Accordingly, ReliaStar argues it is not, as a matter of law, liable to her under any of the causes of action she brings. Ortiz submits there are genuine disputes as to material facts that a jury must decide. Specifically, Ortiz expects Dr. Meisamy to explain the lack of medical bills referring to William's trauma, discuss the details of an AVM, and testify that the symptoms William exhibited immediately following the accident are symptoms associated with an SAH. Such evidence, she claims, should be left for the jury to hear and weigh because it contradicts ReliaStar's evidentiary assertions.

"For a claim to be accepted under the terms of the ReliaStar [P]olicy, two requirements must be met. First, the death must be an accident and, second, the cause of the loss must not be excluded." *Stewart v. ReliaStar Life Ins. Co.*, No. SA-10-CA-959-H, 2012 WL 13029517, at *2 (W.D. Tex. Feb. 6, 2012). The parties submit conflicting factual evidence regarding the causation

5

between the car accident, William's underlying AVM, and William's death. To be sure, filtering through the evidence submitted by both parties requires the Court to engage in weighing the evidence—a task with which the Court must not engage when deciding a motion for summary judgment. *See Turner*, 476 F.3d at 343. Resolving "all reasonable doubts in favor of" Ortiz, *Casey Enter.*, 655 F.2d at 602, a reasonable jury could find credible Dr. Meisamy's testimony, which could affect ultimate determinations as to causation of William's death.

## CONCLUSION

For the foregoing reasons, the Court finds there is a genuine dispute regarding material facts in this case. A jury should hear the evidence.

It is therefore **ORDERED** that Defendant ReliaStar Life Insurance Company's Motion for Summary Judgment (Dkt. #31) is **DENIED**.

**IT IS SO ORDERED**.
**SIGNED** this 17th day of February, 2022.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE