# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| SHEMILY ORTIZ, § § *Plaintiff*, § § v. § § RELIASTAR LIFE INSURANCE § COMPANY, § § *Defendant*. § | Civil Action No. 4:20-CV-00915 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Reliastar Life Insurance Company's Motion To Exclude And/Or Limit The Testimony Of Sina Meisamy, M.D (Dkt. #32). Having considered the motion and the relevant pleadings, the Courts finds the motion should be **DENIED**.

## BACKGROUND

Plaintiff Shemily Ortiz ("Ortiz") brings this action against Defendant ReliaStar Life Insurance Company ("ReliaStar") based on its denial of her claim for accidental death and dismemberment ("AD&D") insurance following the death of her husband, William Ortiz ("William"). William passed away on April 13, 2018—twenty days after he and his sons were rear-ended in their vehicle at a red light. The accident resulted in $639.60 of damage to the vehicle. No first responders nor police were called to the scene. Further, at the time, William had asked his teenage sons to keep the news of the accident from their mother, Ortiz, to prevent her from becoming upset. That evening, William acted strangely while at home with his family. The next morning, March 25, 2018, William was taken to the emergency room by ambulance. Ortiz, unaware of the car accident, did not inform the emergency personnel of its occurrence. At some point after the Ortiz family had arrived at the hospital, hospital personnel questioned the family

1

and learned about the car accident from the two sons. Ortiz first became aware of the accident at this time.

At the hospital, a CT scan revealed a subarachnoid hemorrhage ("SAH"), resulting in William's transfer to a different hospital for a greater level of care. There, a neurologist examined William, finding a ruptured aneurysm of an intracranial artery, for which the neurologist ordered an angiogram and embolization procedure that a diagnostic radiologist performed the following day. The radiologist's preoperative and postoperative diagnosis was "ruptured flow related aneurysm related to [arteriovenous malformation ('AVM')]" (Dkt. #31 at p. 8). It is now known that William was born with the defect AVM (Dkt. #31-1 at p. 5). William ultimately died from the SAH.

There is dispute as to how William's AVM affected his death. ReliaStar submits that a "ruptured aneurysm—an abnormal anatomical structured that is unrelated to a traumatic event—caused the SAH from which [William] died" (Dkt. #38 at p. 4). Ortiz argues that "[t]here is no evidence that William died of any illness . . . [and] nowhere or anywhere is [AVM] suggested or proven to be an 'illness'" (Dkt. #31-1 at p. 5). Further, Ortiz contends that "even if an AVM is an 'illness' [i]t has nothing to do with a[n] SAH caused by an auto accident" (Dkt. #31-1 at p. 5). Ortiz' expert, Sina Meisamy, M.D ("Dr. Meisamy"), asserts that "the car accident caused a catecholamine release which increased the pressure on the AVM, causing the aneurysm to rupture, and [led] to the SAH" (Dkt. #38 at p. 6). These arguments present the crux of the dispute in this case because under William's life insurance policy, benefits are payable only if the insured "dies as the result of a covered loss due to a covered accident" which excludes "loss directly or indirectly caused by physical illness" (Dkt. #31 at p. 11).

On September 17, 2021 ReliaStar filed the present motion to strike or limit Dr. Meisamy's expert testimony (Dkt. #32). Ortiz filed her response on October 1, 2021 (Dkt. #34). ReliaStar filed its reply on October 8, 2021 (Dkt. #37).

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert

3

testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

ReliaStar asks this Court to exclude Dr. Meisamy's expert testimony. Dr. Meisamy seeks to testify on two theories he submits could explain the cause of William's death. First, he plans to testify as to a direct cause theory, which ReliaStar claims is conclusory and based solely on *ipse dixit*. Second, Dr. Meisamy plans to testify as to an indirect cause theory, which ReliaStar asserts is medically flawed and unsupported by the relevant studies and would also be unhelpful to a jury. The Court will address each argument in turn.

### I. Dr. Meisamy's Direct Cause Theory

Dr. Meisamy's expert report theorizes that the trauma from William's car accident directly caused the SAH that killed him. ReliaStar says he "identified no empirical evidence, medical literature, or studies to support [t]his opinion" (Dkt. #32 at p. 6). Accordingly, ReliaStar claims the direct theory is improperly based on *ipse dixit*.

4

When an expert's testimony "relies in part on his own ipse dixit, rather than on something more readily verifiable . . . it is open to attack." *In re TMI Litig.*, 193 F.3d 613, 687 (3d Cir. 1999), amended, 199 F.3d 158 (3d Cir. 2000) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315–16 (9th Cir.), *cert. denied*, 516 U.S. 869 (1995)). But in his expert report, Dr. Meisamy does not rely solely on his status as a medical professional to support his conclusions. He explains the details of SAH, asserting that it can be caused by trauma, among other things (Dkt. #35 Exhibit 4). Further, in his deposition testimony, he discusses how, based on medical studies, William's underlying AVM could have impacted—or not impacted—him after the car accident (Dkt. #35 Exhibit 5). Dr. Meisamy is a qualified expert—which ReliaStar does not dispute—who relied on scientific reasoning to support his conclusions. This evidence is admissible. If ReliaStar wishes to test Dr. Meisamy's bases and conclusions regarding the direct theory of causation, it may do so with rigorous cross-examination.

**II. Dr. Meisamy's Indirect Cause Theory**

Dr. Meisamy "also theorizes that the subarachnoid hemorrhage was indirectly caused by a burst of catecholamines, which increased [William's] blood pressure, creating pressure on [his] AVM, leading to aneurysm rupture" (Dkt. #32 at p. 7). ReliaStar asserts this theory is medically flawed and unsupported by the relevant studies and would also be unhelpful to a jury (Dkt. #32 at p. 7–14). Ortiz rejects each of these assertions, though the Court recognizes the lack of substantive analysis in Ortiz' response. That said, for similar reasons to those stated above, the Court finds arguments among these parties are better characterized as disputes regarding weight and credibility, as opposed to admissibility. Having considered Dr. Meisamy's indirect cause theory and the assertions supporting it, the Court cannot say it is medically flawed or unsupported by the

relevant studies without assigning weight or credibility to the substance of Dr. Meisamy's conclusions and knowledge. Such is a job for the jury.

Further, the Court cannot say that the indirect theory would be wholly unhelpful to the jury. ReliaStar contends that the clause in its Policy "places the burden on the insured to prove that the loss in question was caused by an accidental bodily injury directly and independently of all other causes." *JCPenny Life Ins. Co. v. Baker*, 33 S.W.3d 417, 421 (Tex. App.—Fort Worth 2000, no pet.); *Stroburg v. Ins. Co. of N. Am.*, 464 S.W.2d 827 (Tex. 1971). This is a slight misstatement. In cases that support this contention, the policy language at issue specifically stated that "the loss in question was caused by an accidental bodily injury directly and independently of all other causes." *Id.* Comparatively, the clause in ReliaStar's Policy states that ReliaStar "does not pay benefits for loss *directly or indirectly caused by* . . . [p]hysical or mental illness" (Dkt. #31-1 at p. 22) (emphasis added). This causation requirement, by its plain language, is different than what ReliaStar submits.

That a loss cannot have been directly or indirectly caused by physical or mental illness does not by its own terms deem Dr. Meisamy's indirect causation theory irrelevant or unhelpful. Indeed, it could be both that an accident indirectly caused William's death *and* that the death was not directly or indirectly caused by a physical illness. Dr. Meisamy's testimony on his indirect causation theory could very well attempt to show this distinction, which would be helpful for a jury in determining what caused William's death.

## CONCLUSION

For the foregoing reasons, ReliaStar has not persuaded the Court that Dr. Meisamy's opinions should be excluded.

It is therefore **ORDERED** that Defendant Reliastar Life Insurance Company's Motion To Exclude And/Or Limit The Testimony Of Sina Meisamy, M.D (Dkt. #32) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 17th day of February, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE